UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CORNING FEDERAL CREDIT UNION,**<br><br>    Plaintiff,<br><br>**V.**<br><br>**ROSWELL STEADMAN,**<br><br>    Defendant. | **CIVIL ACTION NO: (            )**<br><br><br>**VERIFIED COMPLAINT<br>AND JURY DEMAND** |

Plaintiff Corning Federal Credit Union ("Plaintiff" or "Corning"), by and through counsel, files this Verified Complaint against defendant Roswell Steadman ("Defendant" or "Steadman") and demands a trial by jury. In support of its Complaint, Plaintiff asserts:

**A.    PARTIES, JURISDICTION, AND VENUE**

1.    This is an action seeking legal and equitable relief for breach of contract for violation of a Non-Solicitation and Non-Disclosure Agreement ("Agreement"). Corning brings this action against its former employee, Senior Financial Advisor Roswell Steadman, to protect its confidential information and customer good will and to prevent irreparable harm that is caused by Steadman's breach of his non-solicitation and confidentiality obligations. Specifically, since abruptly quitting his position at Corning, Steadman began working with Wells Fargo Advisors as a Senior Financial Advisor, a direct competitor of Corning, and used restricted confidential information and solicited restricted customers on behalf of his new employer and for his own personal gain in violation of the Agreement.

2.    Plaintiff is a non-profit credit union with its principal place of business located in Corning, Steuben County, New York.

3.      Upon information and belief, Defendant is a resident of Wilmington, New Hanover County, North Carolina, and a former employee of CCU Wealth Strategies, a division of Plaintiff.

4.      Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1332(a) because Plaintiff is a citizen of this State, and the Defendant is a citizen of a different state, and the amount in controversy exceed the sum or value of $75,000, exclusive of interest and costs. Further, Defendant has consented to the jurisdiction and venue of this Court.

**B.     FACTS**

5.      Corning is a federal credit union and engaged in the business of financial services, including personalized financial planning and wealth management services.

6.      Over the course of eight (8) years, Corning provided Steadman with the support, exposure, introductions to clients and potential clients, training, and professional opportunity to grow a relationship with members of Corning and other prospective clients.

7.      As a Senior Financial Advisor, Steadman had over $100 million in assets, and produced approximately $1 million in revenue per annum.  Steadman also played a key role in developing Corning's overall strategy in the North Carolina market and, further, often served as an entry point for creating or expanding client relationships which, in turn, enhances business opportunities for other Corning groups.

8.      Steadman worked both in New York and North Carolina for Corning, and served members in those states and others.

9.      Steadman was intimately involved and familiar with Corning's business operations, business development plans, financial information, business prospects, member information, and member lists and reports. He participated in meetings and general strategy sessions to lead and grow the investment business.

10. In 2024, Steadman's total cash compensation exceeded $175,000.

11. By virtue of Steadman's role at Corning, he had access to, played a role in developing, and regularly utilized some of Corning's confidential information relating to Corning's member and clients within the financial services group. Such information included, but was not limited to, confidential information relating to Corning's plans for retaining and deepening relationships with existing clients; opportunities for attracting prospective new clients; plans for managing the business's competitive landscape; marketing; pricing strategies; plans relating to expansion; and, insight relating to client satisfaction, dissatisfaction, and preferences.

12. To protect its interests and confidential information, on May 18, 2017, Plaintiff and Defendant entered into the Agreement in which Plaintiff agreed to promote and employ Defendant as a Financial Advisor. A true and accurate copy of the Agreement is incorporated and attached hereto as **Exhibit A**.

13. In signing the Agreement, Defendant made key promises that he subsequently breached. He promised that he would not solicit or call upon members/clients for one year following the separation of his employment. He promised that he would not disclose Plaintiff's confidential information, specifically including the identity of its members and clients. Defendant breached both of these promises to Plaintiff.

14. Section 1 of the Agreement stated that Defendant, during the term of his employment, "will not engage in any other similar business during the term of [his] employment."

15. The Agreement also included an "Agreement Not to Solicit" provision, which stated:

> For a period of one (1) year following the termination of employment for any reason, you will not, and you will cause entities controlled by you, not to directly or indirectly, for your own or their account, or as an agent, employee, officer, director, trustee, consultant or member, partner, shareholder or other equity holder of any person or

entity (other than as an owner of 1% or less of the number of outstanding securities of any class of publicly traded securities) or through investment of capital, lending of money or property, solicit, call upon, provide any services of a similar type as those provided by the Credit Union to, directly or indirectly, any member or client of the Credit Union that had an account to receive the Services when your employment terminated or assist, directly or indirectly, any other party in such solicitation or provision of similar services. As used herein, the term "solicit" includes initiation of any contact with any member or client for the purpose of conducting business with or transferring accounts to any other person or firm that performs services similar to the Services.

16. The Agreement also included a "Confidentiality" provision, which stated:

During and after your employment at the Credit Union, you shall not: (i) disclose or permit the disclosure of Confidential Information except as specifically authorized in writing by the Credit Union; (ii) use or permit the use of Confidential Information except for the purposes of performing the Services on behalf of the Credit Union; (iii) copy or reverse engineer, reverse compile or attempt to derive the composition or underlying information of any such Confidential Information; (iv) remove from the Credit Union any documents, files, electronic storage media or other devices containing any Confidential Information. In addition, you shall fully cooperate with the Credit Union to limit any legally compelled disclosure.

"Confidential Information", as used in this Agreement, means all information pertaining to the Credit Union's business, and all information relating to the members and clients of the Credit Union, which you have access to or learn during your employment. Without limiting the generality of the foregoing, Confidential Information shall include trade secrets, financial information, business plans, business prospects, source codes, object codes, research, development, accounting, marketing, member information, member lists, client lists, reports, projects, proposals, estimates, invoices, notes and all other documents or information, whether oral, written, or electronically compiled or stored. Such information shall be Confidential Information whether it is disclosed by plans, drawings, reports, or other written materials provided by the Credit Union, by conversations with the Credit Union's employees, agents, or members, by observation or inspection of physical objects or electronic displays, or by any other method. Confidential Information shall not include information that: (i) is or becomes a matter of public knowledge through no fault of yours, (ii) was rightfully disclosed to you by a third party not subject to, or bound by, a confidentiality agreement or other contractual, legal or fiduciary obligation of secrecy to the Credit Union.

17. Throughout his employment and for a period of one year thereafter, Defendant had the obligation to adhere to the non-solicitation provisions contained in the Agreement.

18. Throughout his employment and for all times thereafter, Defendant had the obligation to adhere to the confidentiality provisions contained in the Agreement

19. On May 12, 2025, Defendant abruptly and without prior notice quit working for Plaintiff and stated that he had accepted a similar position with Wells Fargo Advisors.

20. The position Defendant holds with Wells Fargo Advisors performs the same duties as he had with Plaintiff.

21. In violation of the Agreement, Defendant has disclosed, and used and/or permitted the use of Confidential Information for the benefit of himself and Wells Fargo Advisors. Among other breaches, after quitting Steadman contacted a member of Plaintiff with whom he had directly worked and serviced while employed, scheduled a meeting with the member to discuss transferring away its brokerage account, and subsequently transferred the account from Corning to Wells Fargo Advisors; contacted another member of Plaintiff with whom he had directly worked and serviced while employed and transferred its brokerage account from Corning to Wells Fargo Advisors; and directly solicited more than 12 members of Plaintiff, at times providing the members with his new contact information and title at Wells Fargo Advisors. As of the filing of this action, eighteen (18) of the members to whom Defendant provided services while employed with Plaintiff transferred their accounts to Wells Fargo Advisors, totaling a transfer of approximately $19,000,000 in funds under investment.

22. In violation of the Agreement, and by email dated August 19, 2025, Wells Fargo Advisors acknowledged and admitted that Defendant had reversed engineered Plaintiff's Confidential Information for the purpose of contacting members and clients of Plaintiff on his own behalf and on behalf of Wells Fargo Advisors.

23. Wells Fargo Advisors used the Confidential Information given to it by Steadman to send solicitations to restricted members based on the information Defendant provided to it.

24. In violation of the Agreement, Defendant has solicited numerous members and clients of Plaintiff.

25. In violation of the Agreement, Defendant has solicited the aforementioned members and clients in an effort to divert Plaintiff's business and with the purpose of conducting business with or transferring accounts to Wells Fargo Advisors.

26. Upon information and belief, in the days prior to his resignation, Defendant contacted members and notified them that he was leaving Plaintiff, with an intent to solicit their business.

27. Following his departure from Plaintiff, Defendant contacted numerous members he had provided services to in an effort to solicit their business. This contact included phone calls and mailings.

28. On May 16, 2025, Plaintiff sent to Defendant a cease a desist letter based on his active solicitation of certain members/clients. Despite being warned that legal action would commence if he did not comply with the terms of the Agreement, Defendant ignored the letter and continued to violate the Agreement.

29. Following the issuance of the cease and desist letter, upon information and belief Defendant worked with Wells Fargo Advisors to share Confidential Information to send a direct mailing to most if not all of his former clients/members.

30. Wells Fargo has confirmed that Defendant reverse engineered and compiled the list of clients he serviced for Corning in order to contact them and provided this Confidential Information to Wells Fargo.

31. As a result of Defendant's solicitation of Plaintiff's members and clients and improper use of Confidential Information, Plaintiff has been damaged in an amount in excess of $75,000, plus interest and costs.

### FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

32. Plaintiff incorporates by reference the preceding paragraphs of the Verified Complaint as if fully set forth herein.

33. Plaintiff and Defendant exchanged reasonable consideration for the Agreement which is a valid and binding contract.

34. Plaintiff has performed all of its duties under the Agreement.

35. Defendant breached the Agreement by reverse engineering and otherwise compiling member lists, member information and client lists, and then by using that information for himself and for Wells Fargo Advisors.

36. Defendant breached the Agreement when he contacted members and clients of Plaintiff for the purpose of conducting business with or transferring accounts to himself and/or for Wells Fargo Advisors both during his employment and thereafter and otherwise improperly soliciting Plaintiff's members and clients.

37. Defendant breached the Agreement by disclosing Confidential Information.

38. Defendant breached the Agreement by using or permitting the use of Confidential Information for a party other than Plaintiff.

39. Plaintiff believes and therefore alleges that Defendant will continue to violate the Agreement unless he is restrained.

40. Under the express terms of the Agreement, Plaintiff is entitled to an election of remedies at its sole discretion to (1) restrain a breach of the Agreement by injunction, without

7

posting bond, or (2) to recover liquidated damages from Defendant in the amount equal to: eighteen (18), multiplied by the average monthly fees received by the Credit Union for services rendered by him during the twelve (12) months immediately preceding his termination.

41. As a result of Defendant's breaches of contract, Plaintiff has and will continue to sustain irreparable injury, the damages which cannot now be calculated. In addition, based on the improper conduct of Defendant to date, Plaintiff has been damaged in an amount in excess of $75,000, plus interest and costs. Likewise, Plaintiff is entitled to liquidated damages and/or a temporary and permanent injunction at its election.

## SECOND CAUSE OF ACTION
### (PRELIMINARY AND PERMANENT INJUNCTIONS)

42. Plaintiff incorporates by reference the preceding paragraphs of the Verified Complaint as if fully set forth herein.

43. Defendant's actions threaten Plaintiff with irreparable harm if they are not enjoined from continuing to contact and solicit Plaintiff's members and clients, and from using Confidential Information.

44. Plaintiff will be irreparably harmed if Defendant is not ordered to disclose all confidential information that he has reverse engineered and compiled, to provide a complete accounting of the members and clients he has solicited, to provide a complete accounting of all member and client identities and information he provided to Wells Fargo Advisors, and to submit to immediate discovery in this matter.

45. Upon information and belief, Defendant continues to attempt to contact and solicit and interfere with the relationships between Plaintiff and its members and clients as a means to unlawfully compete with Plaintiff.

46. Defendant would not have any knowledge of or access to the Confidential Information but for the information he gained through his employment with Plaintiff

47. In order to preserve the status quo and to protect and preserve the rights of Plaintiff, a preliminary and permanent injunction should be issued restraining Defendant from continuing the following conduct:

- Soliciting or attempting to solicit Plaintiff's members and clients in violation of the Agreement,
- Contacting Plaintiff's members and clients,
- Transacting competitive business with Plaintiff obtained through the improper use of Confidential Information in violation of the Agreement, and
- Using any Confidential Information obtained from Plaintiff either directly or through reverse engineering.

48. In order to assess the breadth of the solicitation of Plaintiff's members and clients, Defendant should be ordered to provide Plaintiff with a complete accounting of the persons he has solicited and related compensation he has received from violating the Agreement.

49. Unless Defendant is enjoined Plaintiff will be irreparably harmed by the continued disclosure of confidential information, the loss of goodwill, and present and future economic harm with is presently incalculable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays the Court award it the following relief:

A. Judgment in favor of Plaintiff for its claims;

B. Actual, compensatory, consequential, and other damages;

C. Costs of this action, including reasonable attorney's fees;

D. Pre or post-judgment interest as permitted by law;

E. A preliminary and permanent injunction as set forth above, or liquidated damages, at Plaintiff's election;

    F.    For such further relief as the Court deems just and proper.

Plaintiff hereby reserves the right to amend this Verified Complaint to supplement or modify the factual allegations and claims contained herein, based upon information received from the Defendant, witnesses, experts, and others in the course of discovery in this matter.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

DATED: December 30, 2025.

                /s/ Matthew P. Heiskell_____
Spilman Thomas & Battle, PLLC
48 Donley Street, Suite 800
Morgantown, WV 26501
304.291.7920
mheiskell@spilmanlaw.com

**Attorney for Plaintiff**

22329779